This case was originally heard, in part, before Deputy Commissioner Gregory M. Willis in Asheville, North Carolina on May 3, 1995. The hearing transcript from that original hearing was mostly complete, with the exception of the testimony of Allen Roderick, as the tape of Mr. Roderick's testimony was not clearly audible.
Following the May 3, 1995 hearing, the record remained open to allow the parties to produce additional evidence. The parties submitted the depositions of Dr. Robert Kline and Dr. John Silver. In addition to the evidence accepted at the original hearing, these documents were made part of the record in the case, and all objections raised by counsel were overruled by Deputy Commissioner Willis.
Deputy Commissioner Willis rendered a decision in favor of defendant by Opinion and Award filed August 11, 1995. Plaintiff then requested and was granted a re-hearing before Deputy Commissioner William L. Haigh, which was held in Asheville, North Carolina, on February 19, 1997. A Pre-trial Agreement was submitted, which, along with stipulations, is hereby incorporated by reference. The parties, in addition to the testimony and any exhibits introduced at the re-hearing, have stipulated that the prior medical depositions as well as the transcript of the original hearing be, and the same are hereby made part of the record of this case.
 ***********
Defendant has filed a motion to dismiss plaintiff's appeal for failure to timely file the appeal. Plaintiff, in the alternative, has filed a motion for leave for late filing of the appeal. The undersigned, pursuant to Rule 801 and in the interest of justice, have decided to allow plaintiff's appeal to proceed and to be decided on the merits. Accordingly, defendant's motion to dismiss is HEREBY DENIED, and plaintiff's motion for leave is HEREBY GRANTED.
Accordingly, the undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
 ***********
Based upon the competent, credible, and convincing evidence of record, the undersigned make the following additional
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Haigh, plaintiff was 52 years old with a date of birth of March 24, 1944. Plaintiff had completed high school and had training from an occupational school. Before working for defendant, plaintiff had been a carpenter in fine woodworking for 20 years in California and Florida. Plaintiff worked for defendant for six months as a carpenter.
2. On September 21, 1994, a two by four board was being used by carpenters (not employed by defendant) to install a tongue and groove plywood floor. The board would be placed against the plywood and hammered to force the tongue in the groove. By using the board to force the plywood in place, no hammer marks would be made on the plywood while hammering. During a break in installing the plywood, the board was placed, standing up, against the doorjamb.
3. After the board was placed against the doorjamb, plaintiff was standing next to the board and inserting screws into the doorjamb. The board slipped from its resting place, fell forward, and struck plaintiff on the right shoulder. The board fell a short distance, and the blow to plaintiff's right shoulder was relatively light. This incident was an interruption of his regular work routine by unusual circumstances likely to result in unexpected consequences.
4. Plaintiff stated that he was kneeling when the board fell, that it struck him in the neck and right shoulder, and that he lost consciousness after the blow. This testimony is not accepted as credible or convincing by the undersigned. The basis for this finding of credibility is that two witnesses who were not employed by the defendant contradicted plaintiff's testimony and that there was no credible or convincing explanation from a medical professional as to how such an incident would cause plaintiff to lose consciousness. Immediately after the incident, plaintiff gave no indication of any injury, although shortly afterward he began to hold his arm as it if were broken; and observers described this as a "delayed reaction".
5. Plaintiff first received medical treatment on September 29, 1994, about a week after the incident, from Dr. Robert Kline, a family practitioner. At this time, there were no bruises or scratches on plaintiff's neck or shoulder. Plaintiff complained that his right arm felt weak, that he was experiencing increased neck pain, and that the fingers on his right hand became numb while driving. Dr. Kline ordered x-rays; and at the time of the x-rays, there were osteophyte formations and disc space narrowing of the cervical spine at levels C-5 through C-7, and plaintiff suffered from spondylosis. However, at this time, there were no fractures, no soft tissue swelling, and no odontoid abnormalities. Dr. Kline referred plaintiff to physical therapy.
6. Plaintiff returned to Dr. Kline on October 7, 1994. Dr. Kline increased plaintiff's medication and excused him from work for one week. Plaintiff was to return to work at light duty after the week if his condition improved.
7. Plaintiff returned to Dr. Kline on October 17, 1994. At this examination, plaintiff complained of continued neck pain and weakness in his right arm. On examination, the plaintiff demonstrated "give-away" weaknesses in both arms (whereas plaintiff claimed an injury only to his right arm). A give-away weakness is one in which a patient initially shows normal strength, but that strength "gives away". One explanation for the giving-away is that the plaintiff suddenly experiences pain, and another explanation for the give-away weakness would be that plaintiff is malingering. Because plaintiff has never claimed an injury or pain to his left arm, a sudden experiencing of pain would not explain the give-away weakness to his left arm. Dr. Kline referred plaintiff to Dr. John Silver, a neurosurgeon, and Dr. Kline excused plaintiff from work until the examination by the neurosurgeon.
8. The examination by Dr. Silver was on November 2, 1994. At that time, plaintiff complained that since the incident of September 21, 1994, he had experienced headaches, dizziness, blackouts, confusion, memory loss, blurring and loss of vision, hearing loss, difficulty swallowing, loss of balance, elevated blood pressure, difficulty sleeping, and tension. No medical professional has been able to sufficiently or convincingly explain how the light blow to plaintiff's right shoulder (or any other description of an injury) could result in the above-noted complaints. When conducting a motor examination, plaintiff demonstrated diffuse give-away weaknesses, which were not associated with any particular muscle group. Further the give-away weaknesses included give-away weakness to plaintiff's right leg as well as his right arm, although plaintiff has never complained of an injury to his right leg.
9. At the time of the original hearing before Deputy Commissioner Willis, plaintiff had returned to work in Florida as a carpenter and was earning the same or greater wages as he was earning with defendant on September 21, 1994.
10. At the time of the re-hearing before Deputy Commissioner Haigh, plaintiff was still working in Florida as a carpenter doing cabinetry work, earning $15.00 an hour, so that plaintiff-employee's wages have continued to exceed his pre-accident earnings with defendant-employer.
11. There is insufficient credible or convincing evidence of record from which the undersigned can find from its greater weight that the incident of September 21, 1994, caused any injury to plaintiff.
12. There is insufficient credible or convincing evidence of record from which the undersigned can find from its greater weight that plaintiff retains any permanent partial impairment to any part of his body as a result of the incident of September 21, 1994.
13. There is insufficient credible or convincing evidence or record from which the undersigned can find from its greater weight that any medical treatment plaintiff received after September 21, 1994, was made necessary as a result of the incident of September 21, 1994.
 ***********
The foregoing stipulations and findings of fact engender the following
 CONCLUSIONS OF LAW
On September 21, 1994, plaintiff suffered an accident arising out of and in the course of his employment with defendant-employer. However, plaintiff did not sustain any injury as a result of that accident. N C.G.S. § 97-2(6); Pollard v.Krispy Waffle, 63 N.C. App. 354, 304 S.E.2d 762 (1983).
 ***********
The foregoing stipulations, findings of fact, and conclusion of law engender the following
 ORDER
1. Plaintiff's claim for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same, IS HEREBY DENIED.
2. The expert witness fees of Dr. Kline and Dr. Silver were previously paid by or on behalf of defendants. Otherwise, each side shall bear its own costs.
This the ___ day of ___, 1998.
 S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER